UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| KENNETH BOSINGER, individually and d/b/a K-TRONICS,<br><br>　　　　　　　　　　　　Plaintiff,<br>　　vs.<br><br>BELDEN CDT, INC., and DOES 1-25, inclusive,<br><br>　　　　　　　　　　　　Defendants. | CASE NO. 07cv1102<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
|---|---|

　　　　Presently before the Court is defendant Belden CDT, Inc.'s motion for summary judgment. For the following reasons, the motion is granted.

BACKGROUND

Factual Background

　　　　This case arises out of plaintiff Kenneth Bosinger's termination as a sales representative for defendant, Belden CDT. Prior to his termination, plaintiff was an independent contractor who received commissions on products sold to customers whose accounts he had obtained. In this case, plaintiff seeks post-termination commissions on his accounts.

　　　　The following facts are undisputed. Plaintiff, doing business as K-Tronics,[1] began representing defendant's predecessor company, Dearborn Wire and Cable Co., in 1986. Plaintiff

---

[1] "Plaintiff" hereinafter refers to Kenneth Bosinger, doing business as K-Tronics, an unincorporated association.

1  acted as an independent contractor, pursuing sales of cable and wire products for use in the
2  broadcasting, computer, entertainment, security, instrumentation, and networking industries.
3  Plaintiff sought new accounts and serviced existing accounts, spending approximately forty hours
4  per week "regularly servic[ing] the accounts, hand[ling] any type of complaints, negotiat[ing]
5  contracts . . . [and] keeping in constant contact with the customers . . . ."  (Id. ¶ 45.)
6       Plaintiff signed a five-page contract to begin his representation of the company.  The
7  contract included a provision that either party could terminate the contract upon thirty days'
8  notice.  The contract also provided that plaintiff would only receive commissions on his former
9  accounts for thirty days after termination.[2]  (Defendant's Statement of Facts "SOF", Ex 3, at 4.)
10 Plaintiff asked for an indemnification provision, which he wrote by hand at the bottom of the 1987
11 contract.  (Id. at 5.)
12      In 2002 and 2004, Plaintiff signed new representation contracts with the company.  The
13 2002 contract was signed to recognize Dearborn's successor, Dearborn CDT, and the 2004
14 contract recognized the company, after another merger, as Belden CDT (defendant).  (Opp. at 2.)
15 The 2002 agreement contained termination provisions identical to those in the 1986 agreement.
16 (SOF, Ex. 4 at 4.)  The three-page agreement signed November 1, 2004, which was in effect at the
17 time of plaintiff's termination, contained a substantively identical provision:

> Following termination, Representative shall only receive commissions on orders
> secured by him (it) from customers in the territory up to the termination date that
> are accepted by the company, shipped within 30 days of termination date and
> ultimately paid for.

(Id. Ex. 5 at 3.)  Provisions such as these are "very common" in the industry.  (Plaintiff's Response
to SOF ("RSOF") ¶ 10.)

     Between the signing of the 1986 agreement and the 2004 agreement, plaintiff filed lawsuits
challenging termination provisions contained in his representation contracts with other

---

[2]The provision reads:
> The Representative shall not be entitled to, and the Company shall not be obligated to pay the
> Representative, any commission on sales resulting from orders in respect of which commission would
> otherwise be payable unless such orders are shipped prior to the expiration or termination of this
> agreement and paid within the 30 day period following the effective date of termination.

(SOF, Ex 3, at 4.)

companies.[3]

Prior to signing the 2004 agreement, plaintiff attempted to negotiate his commission rate, which was 4% in the proposed contract provided by defendant, but which plaintiff wished to increase to 5%, the rate he had previously received. (Id. ¶ 34.) Defendant's representative, Sandy Houston, told plaintiff they could revisit his commission percentage in a few months if he signed the contract at that time. Plaintiff signed the 2004 agreement on November 1, 2004, after receiving it in the mail. In May of 2005, defendant gave plaintiff thirty days' notice of its intent to terminate the agreement.

Procedural Background

Plaintiff filed suit on May 29, 2007 in the Superior Court of California for San Diego County. Plaintiff alleges claims for **(1)** a declaratory judgment as to the rights of the parties; **(2)** breach of contract; **(3)** violations of California's Unfair Competition Law; **(4)** breach of the implied covenant of good faith and fair dealing; **(5)** constructive fraud; and **(6)** unjust enrichment. Plaintiff seeks a declaration the commission-termination provision of the 2004 representation agreement is unconscionable and thus he is entitled to a continuing income stream from his former contracts. Plaintiff claims approximately $900,000 in damages based on his pre-termination commission stream.

Defendant removed the case to federal court on June 18, 2007, based on the diversity of the parties. On January 10, 2008, defendant filed a motion for summary judgment. (Doc. No. 13.) Plaintiff filed an opposition to the motion nunc pro tunc to February 19, 2008. (Doc. No. 16.) Defendant filed a reply on February 25, 2008. (Doc. No. 17.) The Court heard oral argument on the motion on March 3, 2008. Alan Geraci appeared on behalf of plaintiff and Douglas Northup appeared on behalf of defendant.

//

//

---

[3] In his opposition to the motion for summary judgment, plaintiff requests the Court take judicial notice of the arbitration opinion in plaintiff's case versus Phillips Plastics Corporation. Plaintiff does not explain the purpose of the request or the legal authority for judicially noticing this unpublished arbitration opinion. Accordingly, the Court denies the request.

**DISCUSSION**

Legal Standard

Summary judgment is proper where the pleadings and materials demonstrate "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A material issue of fact is a question the trier of fact must answer to determine the rights of the parties under the applicable substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. Summary judgment may be granted in favor of a defendant on an ultimate issue of fact where the defendant carries its burden of "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325; see Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1106 (9th Cir. 2000).

The moving party bears "the initial responsibility of informing the district court of the basis for its motion." Celotex, 477 U.S. at 323. To satisfy this burden, the moving party must demonstrate that no genuine issue of material fact exists for trial. Id. at 322. However, the moving party is not required to negate those portions of the non-moving party's claim on which the non-moving party bears the burden of proof. Id. at 323. To withstand a motion for summary judgment, the non-movant must then show that there are genuine factual issues which can only be resolved by the trier of fact. Reese v. Jefferson School Dist. No. 14J, 208 F.3d 736, 738 (9th Cir. 2000) (citing Fed. R. Civ. P. 56; Celotex, 477 U.S. at 323). The nonmoving party may not rely on the pleadings but must present specific facts creating a genuine issue of material fact. Nissan Fire, 210 F.3d at 1103. The inferences to be drawn from the facts must be viewed in a light most favorable to the party opposing the motion, but conclusory allegations as to ultimate facts are not adequate to defeat summary judgment. Gibson v. County of Washoe, Nev., 290 F.3d 1175, 1180 (9th Cir. 2002). The Court is not required "to scour the record in search of a genuine issue of triable fact," Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996), but rather "may limit its review to the documents submitted for purposes of summary judgment and those parts of the record specifically referenced therein." Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1030

(9th Cir. 2001).

A.  Timing of Motion

As an initial matter, plaintiff's opposition notes he is "requesting additional time to obtain and properly present the opposing evidence" because plaintiff "has not yet completed discovery or had an opportunity to examine all the witnesses presented by Defendants [sic] in support of their [sic] motion for summary judgment." (Opp. at 3.) Plaintiff's counsel withdrew this request at oral argument, and therefore the Court considers the motion on the merits.

B.  Breach of Contract/Declaration of Contract Rights

Plaintiff seeks a declaratory judgment that the commission-termination provision is unconscionable. Plaintiff also claims breach of contract for failure to pay commissions after termination. Defendant argues summary judgment should be granted on both of these claims because the facts conclusively show the commission-termination provision is not unconscionable. The parties do not dispute the relevant facts regarding the commission-termination provision, the provision's effect in this case, and the circumstances under which the contract was entered. Accordingly, the Court must decide whether, as a matter of law, the contractual provision is unconscionable.

Section 1670.5 of the California Civil Code directs courts to refuse to enforce contracts or individual contractual provisions which are unconscionable "as a matter of law," but the statute does not define unconscionability. As interpreted by the California courts, unconscionability has both a procedural and a substantive element, "the former focusing on oppression or surprise, due to unequal bargaining power, the latter on overly harsh or one-sided results." Armendariz v. Found. Health Pyschcare Svcs., 24 Cal. 4th 83, 114 (2000) (citations omitted). Both elements must be present in order for the Court to find a provision unconscionable, but not necessarily to the "same degree." Id. at 114. "[T[he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." Id.

1.  Substantive Unconscionability

"Substantive unconscionability focuses on the one-sidedness of the contract terms." Ting

1 v. A T & T, 319 F.3d 1126, 1149 (9th Cir. 2003).  Some California cases have found substantive
2 unconscionability where the term creates an "overly harsh allocation of risks or costs which is not
3 justified by the circumstances under which the contract was made."  Ellis v. McKinnon Broad.
4 Co., 18 Cal. App. 4th 1796, 1803-04 (App. 1993); see also Stirlen v. Supercuts, Inc., 51 Cal. App.
5 4th 1519, 1532 (App. 1997).  The more recent trend is that the term or terms must be so "one-sided
6 as to shock the conscience."  Am. Software, Inc. v. Ali, 46 Cal. App. 4th 1386, 1390 (App. 1996);
7 see also Brutoco Eng'g & Constr., Inc. v. Superior Ct., 107 Cal. App. 4th 1326, 1331 (App. 2003)
8 (requiring provision to "shock the conscience").

9       Defendant argues the provision at issue is not substantively unconscionable, relying on the
10 California Court of Appeal's decision in Ali, 46 Cal. App. 4th at 1390.  In that case, the court
11 found a provision which terminated a salesperson's right to receive commissions thirty days after
12 her termination was not unconscionable.  The court considered the prevalence of commission-
13 termination provisions "in employment contracts with sales representatives, such as Ali, who have
14 ongoing responsibilities to 'service' the account once the sale is made."  Id. at 1393.  The court
15 found "no unclear or hidden terms in the employment agreement and no unusual terms that would
16 shock the conscience, all leading to the conclusion that the contract accurately reflects the
17 reasonable expectations of the parties."  Id. at 1394.  Ali distinguished another California Court of
18 Appeal decision in Ellis, 18 Cal. App. 4th at 1796, which evaluated substantive unconscionability
19 under the standard of "reasonableness" rather than asking whether the provision "shocks the
20 conscience."  The Ali court also relied upon another case involving servicing duties, Chretian v.
21 Donald L. Bren Co., 151 Cal. App. 3d 385, 390 (App. 1984).  In Chretian, the court found the
22 salesperson's servicing responsibilities justified the commission-termination provision, because
23 "[i]f the entire commission were to be deemed earned by merely obtaining buyers, the burden of
24 servicing those buyers pending escrow would fall on [the company's] other salespersons
25 unfamiliar with the earlier transaction who would receive nothing for their efforts."  Id. at 390.  In
26 Ellis, by contrast, the servicing responsibilities of the salesperson constituted only "ten to 15
27 percent" of the representative's work, and thus did not justify the commission-termination
28 provision.  18 Cal. App. 4th at 1801.

1    At oral argument, plaintiff's counsel argued <u>Ali</u> should be distinguished because of the strong evidence in that case that the contract was not procedurally unconscionable. The clear holding of <u>Ali</u> and <u>Chretian</u> on substantive unconscionability, however, controls this case. Plaintiff testified at deposition he spent about forty hours a week "regularly servic[ing] the accounts, hand[ling] any type of complaints, negotiat[ing] contracts . . . [and] keeping in constant contact with the customers . . . ." (RSOF ¶ 45.) Plaintiff's counsel stated at oral argument that without this servicing, the orders placed by plaintiff's previous customers are expected to decline over time. Because the undisputed facts show plaintiff's commissions are in large part compensation for this kind of servicing work, which a terminated representative does not perform, termination of the commissions after thirty days is neither an "objectively unreasonable" allocation of the risks of the contract, nor does it "shock the conscience." Accordingly, the Court finds the term was not substantively unconscionable.

2.    Procedural Unconscionability

Both procedural and substantive unconscionability are required in order for the Court to declare a contract unconscionable. <u>Armendariz</u>, 24 Cal. 4th at 114. The Court does not need to consider the procedural unconscionability of the 2004 agreement. Because, however, the two components are assessed on a sliding scale, the Court will consider whether plaintiff has made such a high showing of procedural unconscionability so as to lessen the requirement for substantive unconscionability. <u>Cf.</u> <u>Gatton v. T-Mobile USA, Inc.</u>, 152 Cal. App. 4th 571, 585 (App. 2007) (holding once "minimal" procedural unconscionability is shown, the Court should not enforce the provision if it has a "high degree" of substantive unconscionability).

Procedural unconscionability "focuses on factors of oppression and surprise. The oppression component arises from an inequality of bargaining power of the parties to the contract and an absence of real negotiation or a meaningful choice on the part of the weaker party." <u>Kinney v. United Health Care Svcs., Inc.</u>, 70 Cal. App. 4th 1322, 1329 (App. 1999).[4] Surprise is

---

[4] The Ninth Circuit has recently explained the relationship between "contracts of adhesion" and procedurally unconscionable contracts:

> Under current California law, it is unclear whether a contract of adhesion is inherently oppressive, and therefore automatically procedurally unconscionable, or whether oppression is a separate element that

1 present when "the terms to which the party supposedly agreed [are] hidden in a prolix printed form
2 drafted by the party seeking to enforce them." Id.

3      The facts in this case do not show a high level of procedural unconscionability. Plaintiff
4 cannot claim unfair "surprise" because he read the contract,[5] he is a salesperson familiar with the
5 importance of contracts,[6] a similar term was included in each of his contracts with defendant and
6 defendant's predecessors, and he had an opportunity to review the short, three-page contract which
7 was mailed to his house.[7] Unlike in Ellis, plaintiff's written contract did not replace an oral
8 contract "without warning," nor did defendant claim the contract was a "mere 'formality.'" 18 Cal.
9 App. 4th at 1804. Accordingly, the Court declines to find a high degree of procedural
10 unconscionability such that only "minimal" substantive unconscionability would compel the Court
11 to invalidate the provision.

12 C.    <u>Unfair Competition Law</u>

13      Defendant also argues the Court should grant summary judgment on plaintiff's claim for
14 violations of California's Unfair Competition Law (hereinafter "UCL"). The UCL prohibits
15 "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading
16 advertising." Cal. Bus. & Prof. Code § 17200. The scope of the UCL is "restricted to violations
17 of law, not contract." <u>Accuimage Diagnostics Corp. v. Terarecon, Inc.</u>, 260 F. Supp. 2d 941, 954
18 (N.D. Cal. 2003).

19      Plaintiff claims the 2004 representation agreement violated the Wholesale Sales
20 Representatives Contractual Relations Act of 1990 (hereinafter "WSRCRA"), thus giving rise to a

---

must be present. However, both standards for procedural unconscionability are satisfied by a finding that the . . . provision was presented on a take-it-or-leave-it basis and that it was oppressive due to 'an inequality of bargaining power that result[ed] in no real negotiation and an absence of meaningful choice.'"

<u>Nagrampa v. MailCoups, Inc.</u>, 469 F.3d 1257, 1281 (9th Cir. 2006) (internal citations omitted).

[5] Plaintiff was asked at deposition whether he read the 2004 contract. Plaintiff responded "I'm sure I scanned over – read it and just signed it. Sent it back." (SOF, Ex. 1 at 83-84.)

[6] See <u>Ali</u>, 46 Cal. App. 4th at 1391 (presuming a salesperson understood the significance of contract because salespeople "become familiar with contracts and their importance").

[7] The Court declines to address the importance of plaintiff's prior litigation to his understanding of the meaning of the commission-termination provision, a moot question because plaintiff cannot show a high level of procedural unconscionability.

1  claim for violation of the UCL.  As defendant correctly notes, however, the WSRCRA requires
2  companies to enter into written contracts with sales representatives and pay commissions in
3  accordance with those contracts.  Each of plaintiff's representation contracts were written and
4  plaintiff has not alleged the commissions were not paid in accordance with the contracts.
5  Defendant has not violated the WSRCRA and thus no cause of action arises under the UCL.

D.   Breach of the Covenant of Good Faith and Fair Dealing

Defendant also argues no issues of material fact exist regarding plaintiff's cause of action for breach of the covenant of good faith and fair dealing.  California contract law implies a covenant of good faith and fair dealing, "as a supplement to the express contractual covenants, to prevent a contracting party from engaging in conduct that frustrates the other party's rights to the benefits of the agreement."  Waller v. Truck Ins. Exch., 11 Cal. 4th 1, 36 (1995).  Plaintiff claims the termination of the agreement after only six months violated the implied covenant, given plaintiff's twenty-year history with the company.  Under California law, however, no claim for breach of the implied covenant arises for terminating an at-will agreement.  Guz v. Bechtel Nat. Inc., 24 Cal. 4th 317, 375 (2000).  Accordingly, plaintiff's claim for breach of the covenant of good faith and fair dealing also fails as a matter of law.

E.   Constructive Fraud

Defendant argues summary judgment should also be granted on the constructive fraud claim.  A claim for constructive fraud only arises where the parties have a "fiduciary or confidential relationship."  Assilzadeh v. Cal. Fed. Bank, 82 Cal. App. 4th 399, 415 (App. 2000). It is undisputed that plaintiff was an independent contractor under the representation agreement. Plaintiff nonetheless argues a special relationship exists because the parties were in inherently unequal bargaining positions, the motivation for entering into the contract was not a profit motivation, contract damages are not adequate to compensate plaintiff, plaintiff was especially vulnerable, and defendant knew of this vulnerability.  See Wallis v. Superior Ct., 160 Cal. App. 4th 1109, 1118-19 (App. 1990) (outlining factors for finding special relationship) (overruled by Foley v. Interactive Data Corp., 47 Cal. 3d 654, 692 (1988) (holding no special relationship exists in the "usual employment relationship")).

1   On a motion for summary judgment, once the movant has established no disputed material
2 facts exist, the non-movant bears the burden of citing disputed facts in opposition to the motion.
3 Reese, 208 F.3d at 738; Nissan Fire, 210 F.3d at 1103. In this case, defendant has supported its
4 argument no relationship existed by citing the representation agreement, under which plaintiff was
5 an independent contractor. Plaintiff, however, has not cited any facts showing a special
6 relationship existed. Plaintiff has also not responded to defendant's arguments the contract had a
7 profit motive and contract damages are adequate in this case. Accordingly, since the undisputed
8 evidence is that plaintiff was an independent contractor and plaintiff has cited no facts indicating a
9 "fiduciary or confidential relationship," this claim also fails.

10 F.     Unjust Enrichment

11   Defendant also urges the Court to grant summary judgment on plaintiff's claim for unjust
12 enrichment. Defendant argues there is no cause of action for unjust enrichment under California
13 law. McKell v. Wash. Mut., Inc., 142 Cal. App. 4th 1457, 1490 (App. 2006) ("There is no cause
14 of action for unjust enrichment. Rather, unjust enrichment is a basis for obtaining restitution based
15 on quasi-contract or imposition of a constructive trust."). In response, plaintiff argues "unjust
16 enrichment" is the basis for his claim he was fraudulently induced into signing the contract. (Opp.
17 at 9.)

18   In his opposition, plaintiff claims he was told he would not be terminated if he continued to
19 be successful, and he signed the contract relying on that false promise. Plaintiff's declaration, the
20 only evidence presented by plaintiff in opposition to the motion, does not discuss this alleged
21 promise. In fact, at his deposition, plaintiff stated the only deceptive action he knew of was the
22 termination of the agreement within a few months of entering into it despite his long history with
23 the company.[8] As explained above, the undisputed evidence is that the agreement was at-will and

---

[8] When asked at his deposition what deceptive statements were made to him, plaintiff initially said he didn't know. Defense counsel followed up:
    Q.    Well, as you sit here today, you can't tell me of any false statements or deceptive conduct on the part of anyone at Belden/CDT, can you?
    A.    Well, I think after, you know, 20 something years of service, and, you know, working under these contracts that you brought forward, that within months after issuing the later contract that all of a sudden they just terminate that relationship of 20 something years.
    Q.    What was deceptive about that?    (continued)

1 defendant was free to terminate it at any time.  Accordingly, no evidence supports plaintiff's claim
2 he is entitled to recover for unjust enrichment due to fraudulent inducement.

## CONCLUSION

For the foregoing reasons, the Court GRANTS defendant's motion for summary judgment. The Clerk of the Court SHALL ENTER judgment for defendant and against plaintiff.

IT IS SO ORDERED.

**DATED:  March 18, 2008**

_____
**IRMA E. GONZALEZ, Chief Judge
United States District Court**

---

    A.    I think it would be deceptive that if it was some sort of plan to just convert my revenues over to the company or someone else that it would be deceptive.
    Q.    Anything else?
    A.    No.
(SOF, Ex. 1., at 104-05.)